**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 09-3456 JB

KENNETH SANDOVAL,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on: (I) the Government's Motion for Hearing Pursuant to the Criminal Justice Act to Determine Whether Defendant Kenneth Sandoval is Financially Able to Obtain Counsel, filed April 14, 2010 (Doc. 16)("United States' CJA Motion"); and (ii) the Plaintiff United States of America's oral request for a copy of Sandoval's financial affidavit during the hearing on September 9, 2010.  The primary issues are: (I) whether the Court may release Sandoval's financial affidavit to the United States and Sandoval's counsel, Mr. Michael A. Keefe; and (ii) whether the Court should hold an adversarial hearing to determine Sandoval's eligibility for appointed counsel, in which Sandoval would have the burden of proving by a preponderance of the evidence that he is not financially able to obtain counsel.  After careful consideration of the applicable statute, rules and regulations, and case law, the Court finds that it should not release Sandoval's financial affidavit either to the United States or to Mr. Keefe. Because the United States has presented evidence that casts doubt on Sandoval's financial eligibility for appointed counsel, the Court will conduct an adversarial hearing in which Sandoval will have to establish that he is financially unable to obtain counsel by a preponderance of the evidence.

Sandoval may, however, submit his evidence ex parte.

## PROCEDURAL BACKGROUND

On December 3, 2009, the Grand Jury issued an Indictment, charging Sandoval with seven counts of making a claim to the Internal Revenue Service of the United States Treasury for a refund, knowing the claim to be false and fraudulent, in violation of 18 U.S.C. § 287 and 18 U.S.C. § 2.  See Indictment, filed December 3, 2009 (Doc. 1).  On December 16, 2009, the Honorable W. Daniel Schneider, United States Magistrate Judge, issued an order appointing a federal public defender to represent Sandoval.  On April 14, 2010, the United States filed the Government's Motion for Hearing Pursuant to the Criminal Justice Act to Determine Whether Defendant Kenneth Sandoval is Financially Able to Obtain Counsel.  See United States' CJA Motion (Doc. 16).

The United States' motion alleges that Sandoval is financially able to obtain counsel and asks the Court to inquire  into Sandoval's ability to afford counsel in an adversarial proceeding.  See United States' CJA Motion at 3-5.  The United States also asks the Court to impose upon Sandoval the burden of proving by a preponderance of the evidence that he is financially unable to obtain counsel.  See United States' CJA Motion at 5.

The Court held a hearing on September 9, 2010.  At the hearing, the Court informed the parties that Sandoval's financial affidavit was not in the matter's file.  See Transcript of Hearing at 3:15-18 (taken September 9, 2010)(Court)("Tr.").[1]  Both parties stated that Sandoval should file a financial affidavit with the Court if he had not previously done so.  See Tr. 4:1-4 (Keefe); id. at 7:15-8:1 (Gerson).  The attorney for the United States, Assistant United States Attorney Jonathon Gerson, asked the Court to provide the United States with Sandoval's financial affidavit so that the United

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

States could give the Court any information it has relating to Sandoval's financial status.  <u>See</u> Tr. at 8:16-20 (Gerson).  Mr. Gerson argued that there is nothing in the Criminal Justice Act ("CJA") that requires financial affidavits to be filed ex parte.  <u>See</u> Tr. at 20-21 (Gerson).

Mr. Keefe asked the Court to handle Sandoval's application for appointment of counsel as it would in the normal fashion. <u>See</u> Tr. at 17:10-18 (Keefe).  Mr. Keefe believed that, normally, courts conduct ex parte proceedings to determine whether a person is eligible for the appointment of counsel.  <u>See id.</u> at 17:10-18 (Keefe).  Mr. Keefe was concerned that the United States would be able to use the information in Sandoval's financial affidavit in its case-in-chief against Sandoval. <u>See</u> Tr. at 5:10-14 (Keefe).  He argued that it was better to conduct the eligibility application ex parte to protect Sandoval's Fifth Amendment and Sixth Amendment rights.  <u>See</u> Tr. at 5:14-18 (Keefe).

The Court told the parties that it would determine how to handle Mr. Gerson's request for a copy of the financial affidavit.  <u>See</u> Tr. at 19:25-20:3 (Court). At the hearing, Mr. Keefe did not tell the Court that he would like a copy of Sandoval's financial affidavit should the Court find the affidavit in its file.  Because the Court must determine whether it should disclose Sandoval's financial affidavit to the United States, however, the Court will determine whether it should disclose Sandoval's financial affidavit to Mr. Keefe as well.

## <u>LAW REGARDING THE CRIMINAL JUSTICE ACT</u>

Congress enacted the CJA, 18 U.S.C. § 3006A, in 1964 "to insure effective representation for those charged with a crime or confronted with the risk of being deprived of constitutional rights in ancillary proceedings." <u>United States v. Gonzalez</u>, 150 F.3d 1246, 1258 (10th Cir. 1998)(citation omitted).  Section 3006A states: "Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing

representation for any person financially unable to obtain adequate representation in accordance with this section." 18 U.S.C. § 3006A(a).   A court shall appoint counsel to represent the defendant if it is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel." Id. § 3006A(b).   The statute permits, but does not require, courts to conduct the appointment proceedings ex parte.  In contrast, § 3006A(e) states: "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application." Id. § 3006A(e)(1).  Requests for investigative or expert services are conducted in ex parte proceedings so that the defendant's defense strategy is not disclosed. See United States v. Gonzalez, 150 F.3d at 1258; Marshall v. United States, 423 F.2d 1315, 1318 (10th Cir. 1970)("The manifest purpose of requiring that the inquiry [regarding requests for investigative, expert, and other services] be ex parte is to ensure that the defendant will not have to make a premature disclosure of his case.").

**1.** **Disclosure of Documents Demonstrating a Defendant's Financial Eligibility for Appointed Counsel.**

The statute is silent about disclosure of documents demonstrating a defendant's financial eligibility for CJA status.  See United States v. Gonzalez, 150 F.3d at 1265 ("Neither the statute nor the Administrative Office's rules specify whether [the procedure regarding appointment of counsel] is to be done ex parte."). Because the statute is silent regarding the disclosure of documents demonstrating a defendant's eligibility for appointment of counsel, courts consider the regulations governing the operation of CJA plans.  Section 3006A states that the "Judicial Conference of the United States may, from time to time, issue rules and regulations governing the operation of plans formulated under this section."  18 U.S.C. § 3006A(h).  Accordingly, the Administrative Office of the United States Courts, under the direction of the Judicial Conference, promulgated rules and

regulations regarding the appointment of counsel under the CJA and related statutes.  See Administrative Office of United States Courts, Guide to Judiciary Policies & Procedures, vol. 7, chap. 1, § 120 ("AO Guide").  See also United States v. Gonzales, 150 F.3d at 1252 (stating that the rules set forth in the Guide to Judiciary Policies and Procedures, published by the Administrative Office of United States Courts, govern the administration of the CJA).  The Guide to Judiciary Policies and Procedures sets forth the policy regarding the public disclosure of information pertaining to activities under the CJA.  See AO Guide, vol. 7, chap. 5, § 510.10.  The  guide promulgates a general rule of disclosure and gives courts discretion to override it in particular cases. See United States v. Gonzales, 150 F.3d at 1265.  The guide states:

> Generally, such information which is not otherwise routinely available to the public should be made available unless it:
>
> - is judicially placed under seal;
>
> - could reasonably be expected to unduly intrude upon the privacy of attorneys or defendants;
>
> - could reasonably be expected to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources;
>
> - or otherwise adversely affect the defendant's right to the effective assistance of counsel, a fair trial, or an impartial adjudication.

 AO Guide, vol. 7, chap. 5, § 510.30.  See United States v. Gonzales, 150 F.3d at 1266 (finding that backup documentation, motions, orders and hearing transcripts related to the appointment and compensation of counsel should not be disclosed when disclosure of these documents may subject innocent people who had been interviewed by defendants to public speculation, will intrude on the privacy interests of the defendants, or will reveal privileged information provided by the defendants); United States v. Connolly, 206 F. Supp. 2d 187, 190 (D. Mass. 2002)(declining to

unseal the defendant's financial affidavits, and the defendant's statement of the amount he owed his retained counsel for services rendered, because of the intrusion on the defendant's privacy and his family's privacy).[2]  When weighing these considerations, courts  consider the public's strong and legitimate interest in knowing how its funds are being spent.  See United States v. Gonzales, CR95-0538-MV, 1997 WL 155403, at *6 (D.N.M. Feb. 11, 1997), vacated in part, 150 F.3d 1246 (10th Cir. 1998).

In United States v. Gonzales, the United States Court of Appeals for the Tenth Circuit found that backup documentation, motions, orders, and hearing transcripts related to the appointment and compensation of counsel should be sealed, in part, because disclosure of these documents would unduly intrude on the defendants' privacy interests.  See United States v. Gonzales, 150 F.3d at 1265-66.  The Tenth Circuit stated that disclosure of these documents would reveal information that the United States could use to investigate and bring new charges against the defendants.  See United States v. Gonzales, 150 F.3d at 1266 ("[Disclosure] may also put the government 'in a position to investigate and bring new charges against [defendants who inculpate themselves in uncharged criminal conduct in order to obtain an adequate defense].'")(citation omitted). The Tenth Circuit found that releasing this documentation would unduly intrude on the defendants' privacy interests because the information could implicate the defendants' Fifth Amendment rights as to the crimes for which they were being tried, and it could put the United States in a position to investigate new charges against the defendants.  See United States v. Gonzales, 150 F.3d at 1266 (stating that

---

[2] The opinion in United States v. Connolly did not provide an extensive analysis of the issues. The Honorable Robert B. Collings, United States Magistrate Judge, authored the opinion. Judge Collings stated: "I decline to exercise my discretion to unseal the documents at this time because I find that the intrusion on the privacy of the defendant and that of his family if the documents were released would [be substantial]."  United States v. Connolly, 206 F. Supp. 2d at 190.

disclosure "will intrude on the privacy interests of the Defendants" because "disclosure of th[e] CJA information may implicate the Defendants' Fifth Amendment rights as to this instant crime," and may put "the government 'in a position to investigate and bring new charges'" against the defendants)(citation omitted).

### 2.   Terminating the Appointment of Counsel and the Burden of Proof in Termination Proceedings.

The CJA provides for the termination of appointed counsel.  Section 3006A states:

> If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate.

18 U.S.C. § 3006A(c).

The CJA and its legislative history are silent as to the allocation of the burden of proof in proceedings regarding whether counsel should be appointed or terminated.  See United States v. Harris, 707 F.2d 653, 660 (2d Cir. 1983), abrogated on other grounds by Flanagan v. United States, 465 U.S. 256 (1984).  The Tenth Circuit and other federal courts, however, have placed the burden of proof on the defendant.  See United States v. Barcelon, 833 F.2d 894, 896 (10th Cir. 1987)("Under the Act the applicant bears the burden of persuading the court that he is financially unable to obtain counsel.")(citing United States v. Harris, 707 F.2d at 660); United States v. Peister, 631 F.2d 658, 662 (10th Cir. 1980)("The burden is on the defendant to demonstrate financial inability in order to obtain counsel.")(citation omitted); United States v. Brockman, 183 F.3d 891, 897 (8th Cir. 1999)("When requesting appointment of counsel, the burden is on the defendant to show that he is 'financially unable' to afford representation.")(citation omitted); United States v. Harris, 707 F.2d at 660 (stating that, although the CJA is silent "on the allocation of the burden of

proof in proceedings to determine whether counsel should be appointed or terminated, the weight of authority is that the burden rests with the defendant").  Federal courts have stated that the defendant must prove his financial inability to afford counsel by a preponderance of the evidence. See United States v. Harris, 707 F.2d 661 (stating that if a defendant "fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated"); United States v. Quinlan, 223 F. Supp. 2d 816, 817 (E.D. Mich. 2002)("The defendant must present 'evidence sufficient to prove by a preponderance of the evidence that he is financially unable to employ counsel.'")(citation omitted); United States v. Simmers, 911 F. Supp. 483, 486 (D. Kan. 1995)("Where the defendant's inability to employ counsel has been put in doubt, the defendant has the burden of coming forward with evidence sufficient to prove by a preponderance of the evidence that he is financially unable to employ counsel.")(citation omitted).

In United States v. Harris, the United States Court of Appeals for the Second Circuit upheld the Magistrate Judge's termination of appointed counsel.  See United States v. Harris, 707 F.2d at 654.  At his arraignment, the defendant submitted a financial affidavit requesting appointment of counsel, which indicated that he earned $1,000 a month, and did not own any property.  See id. at 654-55, 660.  The United States later moved for a determination that the defendant was financially able to obtain counsel.  See United States v. Harris, 707 F.2d at 655, 660 ("[W]hen the government moved to terminate the appointment of counsel, it provided [the judge] with considerable detail, ascribing to the [defendant's] family an income of $70,000 for 1980 and $30,000 for 1981.").  In response, the defendant's attorney submitted an affidavit, which disclosed the defendant's earnings and contended that his financial affidavit was accurate; the defendant declined to submit any further evidence unless he was allowed to submit the evidence ex parte.  See United States v. Harris, 707 F.2d at 655, 660-61.  The Magistrate Judge concluded that, on the record before him, the defendant

-8-

had not established his need for appointed counsel, and issued an order terminating the appointment

of counsel for the defendant.  See United States v. Harris, 707 F.2d at 655.  The Second Circuit

upheld the Magistrate Judge's determination, finding that the United States presented evidence that

the defendant was financially able to obtain counsel and that the defendant did not establish that he

was financially unable to obtain counsel.  See United States v. Harris, 707 F.2d at 661-62.   The

Second Circuit set forth the defendant's burden in a proceeding regarding termination of appointed

counsel:

> [W]here a defendant's inability to afford counsel has been put into doubt, he has the
> burden of coming forward with evidence to rebut the government's evidence of
> ability to afford counsel. If a defendant fails to come forward with additional
> evidence instead of relying on a terse form affidavit, and fails to prove by a
> preponderance of the evidence that he is financially unable to afford counsel,
> appointed counsel may be terminated.

United States v. Harris, 707 F.2d at 661.

## LAW REGARDING FIFTH AMENDMENT AND SIXTH AMENDMENT RIGHTS

The Fifth Amendment to the United States Constitution provides: "No person . . . shall be

compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The

privilege against self-incrimination protects the accused from incriminating himself or herself by

his or her compelled testimony.  See Ohio Adult Parole Auth. v. Woodward, 523 U.S. 272, 286

(1998).   The Sixth Amendment to the United States Constitution states: "In all criminal

prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

defence."  U.S. Const. amend VI.  The Supreme Court of the United States has construed the Sixth

Amendment to mean that "in federal courts counsel must be provided for defendants unable to

employ counsel unless the right is competently and intelligently waived."  Gideon v. Wainwright,

372 U.S. 335, 340 (1963).

The CJA puts into operation the Sixth Amendment's guarantee of the right to counsel in criminal prosecutions. See 18 U.S.C. § 3006A. The disclosure of financial information under the CJA to establish eligibility for appointed counsel has raised the issue of possible tensions between the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination. See United States v. Hardwell, 80 F.3d 1471, 1483-84 (10th Cir. 1996). If a defendant is not entitled to some protection against the United States' use of his or her financial disclosures at trial, he or she might be forced to choose between the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination. See United States v. Hardwell, 80 F.3d at 1483-84. A judicial district can implement a CJA Plan which makes clear that the United States cannot use, as part of its direct case, any information that the defendant provides in connection with his or her request for appointment of counsel. See, e.g., United States v. Hilsen, No. 03-CR.919, 2004 WL 2284388, at *3 (S.D.N.Y Oct. 12, 2004). Although the District of New Mexico's CJA Plan does not mention whether the United States may use information that the defendant provides as part of its direct case, the Tenth Circuit has held that the United States violates the defendant's Fifth Amendment right against self-incrimination when it uses the defendant's financial affidavit and other statements he or she made to establish eligibility for appointed counsel in its case-in-chief to prove his guilt at trial.[3] See United States v. Hardwell, 80 F.3d at 1484 ("The government used [the defendant's] financial affidavit and other statements he made to establish eligibility for appointed counsel to prove guilt at trial. We conclude that use of those statements at trial violated [his] Fifth Amendment

---

[3] In United States v. Hardwell, the United States used the defendant's financial affidavit and statements to argue that, because he lacked sufficient legitimate income, he must have obtained the large amount of cash that he had at the time of his arrest from prior cocaine distribution. See United States v. Hardwell, 80 F.3d at 1484. The Tenth Circuit found that the evidence that the defendant lacked sufficient legitimate income to raise money for his defense was essential to his money-laundering conviction. United States v. Hardwell, 80 F.3d at 1484.

right against self-incrimination.").  The Tenth Circuit has not yet decided whether the United States violates the defendant's Fifth Amendment right against self-incrimination when it uses the defendant's financial disclosures to impeach the defendant at trial.  See United States v. Favela Favela, 41 F. App'x 185, 194 (10th Cir. 2002).

## ANALYSIS

The Court will not disclose Sandoval's financial affidavit either to the United States or to Mr. Keefe.  The Court believes that disclosure would unduly intrude upon Sandoval's privacy, as the Tenth Circuit has interpreted that concept in United States v. Gonzales, because there is a possibility that releasing the affidavit could lead to new charges.  After a careful consideration of the applicable statute and case law, the Court finds that it should hold an adversarial hearing to determine whether Sandoval is financially eligible for appointed counsel, in which Sandoval will have the burden of proving by a preponderance of the evidence that he is not financially able to obtain counsel.  Sandoval may, however, submit his evidence ex parte.

**I.      THE COURT WILL NOT DISCLOSE SANDOVAL'S FINANCIAL AFFIDAVIT EITHER TO THE UNITED STATES OR TO MR. KEEFE.**

The Guide to Judiciary Policies and Procedures promulgates a general rule of disclosure and gives courts discretion to override the general rule in particular cases if one of the considerations in the Guide weighs against disclosure.  See AO Guide, vol. 7, chap. 5, § 510.10; United States v. Gonzales, 150 F.3d at 1265.  The Court does not believe that disclosure of Sandoval's financial affidavit would unduly intrude upon Sandoval's privacy as that concept might generally be used, but is concerned that some language in the Tenth Circuit's opinion in United States v. Gonzales requires the Court to keep the affidavit confidential if there is a possibility the affidavit could lead to new charges.  Because this latter consideration weighs against disclosure, the Court will not

disclose Sandoval's financial affidavit either to the United States or to Mr. Keefe.

A court may exercise its discretion to override the general rule of disclosure if it decides, upon request of one of the parties, or upon its own motion, to place the documents under seal.  See AO Guide, vol. 7, chap. 5, § 510.30.  Neither party has asked the Court to place the documents under seal, and the Court has not itself moved to place the documents under seal.  This consideration is thus not applicable and does not weigh against disclosure of Sandoval's affidavit.

A court may exercise its discretion to override the general rule of disclosure if it reasonably expects disclosure to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship, or privileged information that the defendant or other sources provided.  See AO Guide, vol. 7, chap. 5, § 510.30.  The Court finds that disclosure will not compromise Sandoval's defense strategies by disclosing his financial affidavit to his counsel and to the United States.  Unlike the disclosure of documents revealing the hours that counsel spent researching various issues, the subjects that counsel researched, and the persons whom counsel interviewed, which reveal basic information about the nature of the defendant's trial strategy, disclosure of a financial affidavit will not inform the United States of Sandoval's strategy in defending the case.  See United States v. Gonzales, 1997 WL 155403, at *7 (stating that allowing access to detailed records documenting services defense counsel provided, kept so that counsel would be compensated for their work, would disclose the defendants' trial strategy when the information included the names of experts counsel consulted, persons counsel interviewed, subjects counsel researched, and hours counsel expended on various issues, thus revealing basic information about the defendants' trial strategy).

The Court's disclosure of Sandoval's financial affidavit to his counsel and to the United States will not reveal privileged information.  Because the financial affidavit does not -- unlike a

CJA lawyer's timesheets -- reveal, or discuss, any confidential communications between Sandoval and Mr. Keefe, disclosure of Sandoval's financial affidavit will not compromise the attorney-client privilege. See In re Grand Jury Proceedings, Nos. 09-2062, 09-2068, 2010 WL 3258616, at *8 (10th Cir. Aug. 18, 2010)("The attorney-client privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor.")(citation omitted); Barrett v. United States, No. 09-CIV-105-JHP, 2009 WL 2982670, at *4 (E.D. Okla. Sept. 11, 2009)(stating that disclosure of the CJA documents would not violate the petitioner's attorney-client privilege as a review of the CJA documents did not reveal any communications between any attorneys and the petitioner).  This case is distinguishable from United States v. Gonzales, where the Tenth Circuit found that the documents relating to the appointment and compensation of counsel should be sealed as documentation supporting attorneys' vouchers often contains information directly or indirectly implicating attorney-client privilege, see 150 F.3d at 1266, because the information contained in Sandoval's financial affidavit  -- unlike information contained in an attorney's voucher -- does not implicate the attorney-client privilege.

The Court's disclosure of Sandoval's financial affidavit will not compromise attorney work product, because Sandoval did not prepare the affidavit so much in anticipation of litigation or for trial -- like counsel's time sheets -- as he prepared the affidavit to demonstrate his financial eligibility for appointed counsel.  See Fed. R. Civ. P. 26(b)(3); United States v. Gonzales, 150 F.3d at 1266 (finding that motions and backup documentation related to the appointment and compensation of counsel would reveal information that the work-product doctrine protects); Barrett v. United States, 2009 WL 2982670, at *4 (finding that several CJA documents contained the mental impressions and legal theories of counsel because they identified areas in which counsel thought investigative services might be necessary).  Because disclosure of Sandoval's financial affidavit will

not compromise defense strategies, the attorney-client privilege, or attorney work product, the Court finds that this consideration does not persuade it to override the general rule of disclosure.

A court may exercise its discretion and seal CJA documents if it finds that disclosure would adversely affect the defendant's right to the effective assistance of counsel, a fair trial, or an impartial adjudication. See AO Guide, vol. 7, chap. 5, § 510.30. Mr. Keefe's ability to effectively represent Sandoval will not be negatively impacted if the Court discloses Sandoval's financial affidavit to both parties. The Court is not disclosing any documents that allude to defense strategy. The financial affidavit relates only to Sandoval's financial eligibility for counsel. Disclosure would not adversely impact Sandoval's right to a fair trial or impartial adjudication, because the Court is considering only whether it should disclose Sandoval's financial affidavit to the parties. The Court is not considering whether it should disclose Sandoval's financial affidavit to the public, which would raise these issues. Sandoval chose to demonstrate his financial eligibility, and disclosure of his financial affidavit to his counsel and to the United States does not adversely affect these rights. The Court thus finds that this consideration does not weigh against the general rule of disclosure

A court may also exercise its discretion to override the general rule of disclosure if it could reasonably expect that disclosure would unduly intrude upon the privacy of attorneys or defendants. See AO Guide, vol. 7, chap. 5, § 510.30. The Tenth Circuit's analysis in United States v. Gonzales leads the Court to conclude that it should displace the presumed rule of disclosure because, while the disclosure might not unduly intrude on Sandoval's privacy as lay people may understand that term, it could lead the United States to instigate new charges. As in United States v. Gonzales, where the Tenth Circuit found that releasing documentation regarding the appointment and compensation of counsel would unduly intrude on the defendants' privacy interests because the information could implicate the defendants' Fifth Amendment rights as to the crimes for which they

were being tried, disclosure of Sandoval's financial affidavit might implicate Sandoval's Fifth Amendment rights as to the crime for which he is being tried as the Tenth Circuit used that concept in United States v. Gonzales. Although it appears to the Court that the Tenth Circuit's decision in United States v. Hardwell would protect against the United States' use of Sandoval's financial affidavit to prove his guilt at trial, the Tenth Circuit decided United States v. Gonzales after it decided United States v. Hardwell.[4] It thus appears that the Tenth Circuit was concerned about the effect that the disclosure of documents relating to the appointment and compensation of counsel would have on defendants' Fifth Amendment rights, even though its decision in United States v. Hardwell protected against the United States' use of documents generated under the CJA to prove the defendants' guilt at trial. Thus, under United States v. Gonzales, disclosure of Sandoval's affidavit might unduly intrude on his privacy interest because disclosure might implicate his Fifth Amendment rights as to the crime for which he has been charged. While the Court is not certain how disclosure of the affidavit may implicate his Fifth Amendment rights as to the crime for which he has been charged if United States v. Hardwell protects Sandoval against the United States' use of his financial affidavit to prove his guilt at trial, the Tenth Circuit has not yet decided whether the United States may use a financial affidavit to impeach the defendant at trial.[5]

_____

[4] The Tenth Circuit decided United States v. Hardwell in 1996, and United States v. Gonzales in 1998. See United States v. Gonzales, 150 F.3d 1246; United States v. Hardwell, 80 F.3d 1471. The Tenth Circuit did not mention United States v. Hardwell in its opinion in United States v. Gonzales.

[5] Although the Tenth Circuit has not yet decided this issue, a case from the Supreme Court of Wyoming has discussed whether United States v. Hardwell applies when the United States uses an Indigency Affidavit for purposes of impeachment at trial. See Phillip v. State, 225 P.3d 504 (Wyo. 2010). The Supreme Court of Wyoming examined several cases from the Supreme Court of the United States, including Harris v. New York, 401 U.S. 222 (1971), and Miranda v. Arizona, 384 U.S. 436 (1966). See Phillip v. State, 225 P.3d at 513-14. The Supreme Court of Wyoming interpreted these cases to mean that "voluntary statements made by a defendant, although later

Disclosure of Sandoval's financial affidavit could also unduly intrude on his privacy, as the Tenth Circuit in United States v. Gonzales appears to have broadly interpreted that concept, because disclosure might reveal information that the United States could use to investigate and bring new charges against him.  As in United States v. Gonzales, where the Tenth Circuit found that the disclosure of documentation relating to the appointment and compensation of counsel would unduly intrude on the defendants' privacy interests because disclosure would reveal information that the United States could use to investigate and bring new charges against the defendants, disclosure of Sandoval's affidavit might unduly intrude on his privacy interests, as the Tenth Circuit used that concept, because disclosure could put the United States in a position to investigate and bring new charges against him. Although Sandoval's financial affidavit does not reveal a vast amount of information, the affidavit could possibly contain enough information that the United States could investigate and bring new charges against Sandoval, especially if he lied in filling out the financial affidavit.  The Court realizes that this analysis may produce a result with an undesirable side effect. Given the Tenth Circuit's opinion in United States v. Gonzales, there does not appear to be a good mechanism to ensure that defendants tell the truth when they fill out financial affidavits.  If a defendant's financial affidavit is not disclosed to the United States, neither the United States, nor the Court, will be able to ascertain whether the defendant has committed perjury in his or her request for appointed counsel.

Under United States v. Gonzales, it appears that disclosure of Sandoval's financial affidavit could unduly intrude on his privacy, as the Tenth Circuit has interpreted that concept, because

_____

deemed inadmissible as substantive evidence by the Fifth Amendment, [can] be used as impeachment evidence against the defendant if he testifies." Phillip v. State, 225 P.3d at 513.  If the Court were to adopt this rule, this impeachment could harm Sandoval in the trial for the crime for which he has been charged as well as perhaps lead to new charges.

disclosure could put the United States in a position to investigate and bring new charges against him, and might also implicate Sandoval's Fifth Amendment rights as to the crime for which he is being tried.  The Court finds that these considerations weigh against disclosure.  The Court will thus override the general rule of disclosure. The Court will not disclose Sandoval's financial affidavit to the United States. Because Mr. Keefe did not request a copy of Sandoval's financial affidavit, and because the Court is not disclosing Sandoval's financial affidavit to the United States, the Court will not disclose Sandoval's financial affidavit to Mr. Keefe.

## II.    SANDOVAL MUST ESTABLISH BY A PREPONDERANCE OF EVIDENCE THAT HE IS FINANCIALLY UNABLE TO OBTAIN COUNSEL IN AN ADVERSARIAL HEARING.

The United States contends that the Court should hold an adversarial hearing to determine whether Sandoval is financially able to obtain counsel.  See United States' CJA Motion at 4-5.  The United States contends that, at the hearing, the Court should require Sandoval to prove by a preponderance of evidence that he is not financially able to obtain counsel.  See United States' CJA Motion at 5.  The United States alleges that, if Sandoval fails to establish his financial eligibility for appointed counsel, the Court may terminate Mr. Keefe's representation.  See United States' CJA Motion at 5.

In its motion, the United States alleges that, during its investigation of this matter, it came to possess various documents that tend to show that Sandoval has substantial income.  See United States' CJA Motion at 3.  The United States contends that in 2009 Sandoval reported that he had an annual gross base pay of approximately $95,000.00 in a mortgage application connected to his refinance of a home. See United States' CJA Motion at 3 ("In a mortgage application in connection with [Sandoval's] refinance of a home in 2009, Sandoval submitted a 'Verification of Employment' stating that he worked as an account manager, and had done so since May 1991, and had an annual

-17-

gross base pay of $95,148.00. . . .  The Underwriter's Summary, dated July 17, 2009 stated that Sandoval had stable monthly income of $7,929.00, which would annualize to $95,148.00."); United States' Exhibit 1, at 26, 60 ("Ex. 1 ").  Sandoval alleged that he owned three properties in the mortgage application, which had a total market value of $444,000.00.  See Ex. 1, at 31.  The United States contends that in 2007 Sandoval claimed that he had an annual salary of $98,844.00 in a mortgage loan application.  See United States' CJA Motion at 4; United States' Exhibit 2.  The United States also submitted Sandoval's Individual Income Tax Return, Form 1040, from 2009, in which Sandoval reported that his adjusted gross income was $13,243.00, and argued that it did not believe that this amount was an accurate reflection of Sandoval's income for the year.  See United States' Exhibit 3.

The Court finds that the United States has presented evidence that casts doubt on Sandoval's financial eligibility for appointed counsel.  See United States v. Harris, 707 F.2d at 660-61 (stating that the United States presented evidence that cast doubt on the defendant's inability to afford counsel when it provided details "ascribing to the [defendant's] family an income of $70,000 for 1980 and $30,000 for 1981).  Because the United States has presented evidence that casts doubt on Sandoval's financial eligibility for appointed counsel, the Court will determine whether it should terminate the appointment of counsel.   See 18 U.S.C. § 3006A(c)("If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate.").

The Court does not believe that it is required to determine whether Sandoval is financially eligible for appointed counsel in an entirely ex parte proceeding.  Although the CJA requires courts

to conduct ex parte proceedings when defendants request investigative, expert, or other services necessary for adequate representation, it does not require courts to conduct ex parte proceedings for matters involving the appointment or termination of counsel.  <u>Compare</u> 18 U.S.C. § 3006A(e)(1) ("Upon finding, after appropriate inquiry in an ex parte proceeding, that the [investigative, expert, or other services] are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services), <u>with</u> 18 U.S.C. § 3006A(b)(stating that the court shall appoint counsel to represent the defendant if it is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel").  Requests for investigative or expert services are conducted in ex parte proceedings so that the defendant's defense strategy is not disclosed, <u>see</u> <u>Marshall v. United States</u>, 423 F.2d at 1318 ("The manifest purpose of requiring that the inquiry [regarding requests for investigative, expert, and other services] be ex parte is to ensure that the defendant will not have to make a premature disclosure of his case"), which is not an issue in proceedings involving the appointment or termination of counsel.  The Court thus finds that it may conduct an adversarial hearing to inquire whether Sandoval is financially able to obtain counsel.

On the other hand, consistent with <u>United States v. Gonzales</u>, Sandoval may submit his evidence ex parte if he wishes.  It does not appear to make sense, under <u>United States v. Gonzales</u>, to protect him from new charges and possible impeachment by keeping confidential his first financial affidavit, but then forcing him to present new testimony in public.[6]  The Tenth Circuit's

---

[6] The Court believes that a hypothetical involving a defendant's amendment of his or her financial affidavit illustrates this point.  If a defendant amends his or her first financial disclosure because of a change in his or her circumstances, it would not make sense, under <u>United States v. Gonzales</u>, for the Court to keep confidential the defendant's first financial affidavit, but release the amended financial affidavit. Similarly, it would not make sense to keep confidential Sandoval's first financial affidavit, but release any additional evidence he submits to prove his financial eligibility for appointed counsel.

opinion in United States v. Gonzales would appear to require that all information he presents to secure an attorney be kept confidential by the Court if the information could implicate his Fifth Amendment rights as to the crime for which he is being tried, or put the United States in a position to investigate and bring new charges against him.  See United States v. Gonzales, 150 F.3d at 1266 (declining to disclose documents relating to the appointment and compensation of counsel, because disclosure would "intrude on the privacy interests of the Defendants" as it "may implicate the Defendants' Fifth Amendment rights as to this instant crime," and put "the government 'in a position to investigate and bring new charges'" against the defendants).

At the hearing, Sandoval will have the burden of proving by a preponderance of evidence that he is financially eligible for appointed counsel.  The Tenth Circuit has held that a defendant bears the burden of proving that he is financial eligibility for appointed counsel.  See United States v. Barcelon, 833 F.2d at 896 ("Under the Act the applicant bears the burden of persuading the court that he is financially unable to obtain counsel")(citation omitted); United States v. Peister, 631 F.2d at 662 ("The burden is on the defendant to demonstrate financial inability in order to obtain counsel.")(citation omitted).  The Second Circuit has held that the defendant has the burden of proof in a proceeding regarding appointment of counsel and in a proceeding regarding termination of appointed counsel.  See United States v. Harris, 707 F.2d at 660 (stating that, although the CJA is silent "on the allocation of the burden of proof in proceedings to determine whether counsel should be appointed or terminated, the weight of authority is that the burden rests with the defendant").  In both proceedings, the issue is whether the defendant is financially eligible for appointed counsel. The Court will thus follow the Second Circuit, and place the burden of proof on Sandoval at the hearing.  The Court finds that Sandoval must prove his financial eligibility for appointed counsel by a preponderance of evidence.  See United States v. Harris, 707 F.2d at 661 (stating that, if a

defendant "fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated"); United States v. Simmers, 911 F. Supp. at 486 ("Where the defendant's inability to employ counsel has been put in doubt, the defendant has the burden of coming forward with evidence sufficient to prove by a preponderance of the evidence that he is financially unable to employ counsel.")(citation omitted).

A strong argument can be made that the entire proceeding should be adversarial and that the Court should not allow Sandoval to submit any information ex parte. The Second Circuit in United States v. Harris seemed to agree that the court need not allow the defendant to submit evidence ex parte. Arguably, the adversarial hearing will not infringe on Sandoval's constitutional rights, because Sandoval will not have to choose between his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination as a result of the hearing. The Court has Sandoval's financial affidavit in its possession and will not disclose it to the United States. Sandoval is not obligated to present additional evidence to counter the United States' evidence that Sandoval is financially able to obtain counsel. If Sandoval chooses not to testify or present additional evidence, the Court will determine on the evidence before it whether he has established by a preponderance of the evidence that he is financially unable to obtain counsel. If Sandoval chooses to testify or present additional evidence regarding his financial eligibility, the United States may not use the evidence in its case-in-chief to prove Sandoval's guilt at trial. See United States v. Hardwell, 80 F.3d at 1484 ("The government used [the defendant's] financial affidavit and other statements he made to establish eligibility for appointed counsel to prove guilt at trial. We conclude that use of those statements at trial violated [his] Fifth Amendment right against self-incrimination."). The Tenth Circuit has not yet determined whether the United States may use a defendant's financial disclosures for impeachment at trial without violating the defendant's Fifth

Amendment right against self-incrimination, see United States v. Favela Favela, 41 F. App'x at 194, and if the Court were to allow such impeachment, it could harm Sandoval in the trial of the crime for which he has been charged.  Arguably, however, Sandoval, should not be relieved of his burden to demonstrate financial eligibility when the conflict with his Fifth Amendment right is speculative and prospective only.  The Court cannot relieve Sandoval of all burdens or resolve all of his problems.  He would have to, in conjunction with his attorney, decide whether to testify or present evidence at the hearing.  That decision is one that defendants have to make at all stages in a criminal proceeding, including at suppression hearings and at trial.  As the Tenth Circuit stated in United States v. Peister:

> We hold defendant should not be relieved of [the burden to demonstrate his financial eligibility] when any conflict with the Fifth Amendment right is speculative and prospective only.  The time for protection will come when, if ever, the government attempts to use the information against the defendant at trial.  We are not willing to assume that the government will make such use, or if it does, that a court will allow it to do so.

631 F.2d at 661. Nevertheless, because of the Tenth Circuit's analysis in United States v. Gonzales, the Court believes, to be consistent with the Tenth Circuit's logic, it should allow Sandoval to submit evidence ex parte if he wishes.[7]

Because the United States has presented evidence that casts doubt on Sandoval's financial eligibility for appointed counsel, the Court will determine whether it should terminate Mr. Keefe's representation.  After a careful consideration of the CJA and case law, the Court finds that it may

---

[7] This ruling departs from the Second Circuit's approach in United States v. Harris, where the Second Circuit found that a court need not allow a defendant to submit evidence regarding his financial eligibility for appointed counsel ex parte.  See United States v. Harris, 707 F.2d at 662. The Court, however, believes that it should allow Sandoval to submit evidence ex parte if he wishes, because of the Tenth Circuit's analysis in United States v. Gonzales, where the Tenth Circuit broadly interpreted the concept of undue intrusion on a defendant's privacy interests in holding that the court should not disclose documents regarding the appointment of counsel.

and should conduct an adversarial hearing, in which Sandoval will carry the burden of proof regarding his financial inability to obtain counsel.  Sandoval may, however submit his evidence ex parte.

**IT IS ORDERED** that: (I) the Court will keep confidential Defendant Kenneth Sandoval's financial affidavit and will deny Mr. Gerson's oral request for a copy of it; (ii) and the Court will grant the Government's Motion for a Hearing Pursuant to the Criminal Justice Act to Determine Whether Defendant Kenneth Sandoval is Financially Able to Obtain Counsel, filed April 14, 2010 (Doc. 16).


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jonathon M. Gerson
  Assistant United States Attorney
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*



Michael A. Keefe
  Assistant Federal Public Defender
Albuquerque, New Mexico

> *Attorney for Defendant*