## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                  No. CR 09-3456 JB

KENNETH SANDOVAL,

      Defendant.

## MEMORANDUM OPINION AND ORDER
(Public Version)

**THIS MATTER** comes before the Court on the Court's Memorandum Opinion and Order, filed October 4, 2010 (Doc. 26). The Court held a hearing on November 30, 2010. The primary issue is whether Defendant Kenneth Sandoval has met his burden of proving by a preponderance of the evidence that he is not financially able to obtain counsel. After careful consideration of Plaintiff United States of America's evidence and Sandoval's evidence, the Court finds by a preponderance of the evidence that Sandoval is not financially able to obtain counsel.

## PROCEDURAL BACKGROUND

On December 3, 2009, the Grand Jury issued an Indictment, charging Sandoval with seven counts of making a claim to the Internal Revenue Service of the United States Treasury for a refund, knowing the claim to be false and fraudulent, in violation of 18 U.S.C. § 287 and 18 U.S.C. § 2. See Indictment, filed December 3, 2009 (Doc. 1). On December 16, 2009, the Honorable W. Daniel Schneider, United States Magistrate Judge, issued an order appointing a federal public defender to represent Sandoval. On April 14, 2010, the United States filed the Government's Motion for Hearing Pursuant to the Criminal Justice Act to Determine Whether Defendant Kenneth Sandoval is Financially Able to Obtain Counsel, which requested the Court to inquire into Sandoval's ability

to afford counsel in an adversarial proceeding.  See Government's Motion for Hearing Pursuant to the Criminal Justice Act to Determine Whether Defendant Kenneth Sandoval is Financially Able to Obtain Counsel at 3-5, filed April 14, 2010 (Doc. 16)("CJA Motion").  At the September 9, 2010 hearing on the United States' CJA Motion, Sandoval's counsel asked the Court to conduct an ex parte proceeding to determine whether Sandoval is eligible for appointed counsel to protect Sandoval's Fifth and Sixth Amendment rights.  The Court issued a Memorandum Opinion and Order on October 4, 2010, granting the United States' request that it hold an adversarial hearing regarding Sandoval's ability to obtain counsel in which Sandoval has the burden of proving by a preponderance of the evidence that he is financially unable to obtain counsel, but allowing Sandoval to submit his evidence ex parte.  See Memorandum Opinion and Order at 1-2, filed October 4, 2010 (Doc. 26).

The Court scheduled a hearing on November 30, 2010.  A week before the hearing, Sandoval provided the Court with ex parte evidence regarding his financial ability to afford counsel.  See Filed Under Seal -- Ex Parte Motion, filed November 22, 2010 (Doc. 33)(ex parte).  At the hearing on November 30, 2010, the United States stated that it had provided the Court with evidence regarding Sandoval's financial ability to obtain counsel in the form of exhibits to its CJA Motion and exhibits that it introduced at the September 9, 2010 hearing.  The United States informed the Court that it had no further evidence to provide.  Sandoval also stated that he did not have further material he wished to present to the Court.

**RELEVANT LAW REGARDING THE CRIMINAL JUSTICE ACT**

Congress enacted the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"), in 1964 "to insure effective representation for those charged with a crime or confronted with the risk of being deprived of constitutional rights in ancillary proceedings." United States v. Gonzalez, 150 F.3d 1246, 1258

(10th Cir. 1998)(citation omitted). Section 3006A states: "Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section." 18 U.S.C. § 3006A(a). A court shall appoint counsel to represent the defendant if it is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel." Id. § 3006A(b). "'Appropriate inquiry' necessarily varies with the circumstances presented, and no one method or combination of methods is required. Investigation of the applicant's assets, liabilities, income and obligations alone may constitute sufficient inquiry." United States v. Barcelon, 833 F.2d 894, 897 (10th Cir. 1987)(footnote and citations omitted). A court may also consider

> the needs of the defendant and his family, United States v. Harris, 707 F.2d 653, 661 (2nd Cir.), cert. denied, 464 U.S. 997 . . . (1983); U.S. v. Bracewell, 569 F.2d 1194, 1200 (2nd Cir.1978); the amount the defendant posted as bail, see VII Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases ¶ 2.04 at 2-11 (1987); the expense and extent of legal services which the defendant requires, Harris, 707 F.2d at 661, United States v. Coniam, 574 F.Supp. 615, 618 (D.Conn.1983); United States v. Hennessey, 575 F.Supp. 119, 121 (N.D.N.Y.1983), aff'd 751 F.2d 372 (2nd Cir.1984); amounts given the defendant by others for limited purposes only, Bridges v. United States, 588 F.2d 911, 912 (4th Cir.1978); United States v. Bursey, 515 F.2d 1228, 1236 (5th Cir.1975); whether the defendant has secreted assets, United States v. Rubinson, 543 F.2d 951, 964 (2nd Cir.), cert. denied, 429 U.S. 850 . . . (1976); United States v. Schmitz, 525 F.2d 793, 794-95 (9th Cir.1975); and the availability of income to the defendant from other sources such as a spouse, United States v. Caudle, 758 F.2d 994 (4th Cir.1985), or trusts, estates or the like. See, e.g., United States v. Kahan, 415 U.S. 239 . . . (1974); Schmitz, 525 F.2d at 794-95. In addition to these factors the court may also refuse to appoint counsel if it finds that the defendant's portrayal of financial inability lacks credibility. See United States v. Binder, 794 F.2d 1195, 1202 (7th Cir.), cert. denied, 479 U.S. 869 . . . (1986); United States v. Kelly, 467 F.2d 262, 266 (7th Cir.1972); United States v. Martinez-Torres, 556 F.Supp. 1275, 1280 (S.D.N.Y.1983); United States v. Wright, 478 F.Supp. 1178 (S.D.N.Y.1979).

United States v. Barcelon, 833 F.2d at 897 n.5. See United States v. Bayer, No. 89 CR 39, 1989 WL 31017, at *1 (N.D. Ill. Mar. 28, 1989)(stating that, in analyzing whether the defendant has met his

burden of demonstrating financial inability, courts consider the defendant's assets, liabilities, income, expenses, the defendant's needs and his family's needs, "the potential cost of the defendant's representation, funds given to the defendant by others for limited purposes only, the existence of hidden assets, availability to the defendant of income earned by a spouse or . . . other source, and the credibility of the defendant's representations as to his financial affairs" (citations omitted)).

> The CJA provides for the termination of appointed counsel. Section 3006A states:
>
> If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate.

18 U.S.C. § 3006A(c).

The CJA and its legislative history are silent as to the allocation of the burden of proof in proceedings regarding whether counsel should be appointed or terminated. See United States v. Harris, 707 F.2d 653, 660 (2d Cir. 1983), abrogated on other grounds by Flanagan v. United States, 465 U.S. 256 (1984). The Tenth Circuit and other federal courts, however, have placed the burden of proof on the defendant. See United States v. Brockman, 183 F.3d 891, 897 (8th Cir. 1999)("When requesting appointment of counsel, the burden is on the defendant to show that he is 'financially unable' to afford representation." (citation omitted)); United States v. Peister, 631 F.2d 658, 662 (10th Cir. 1980)("The burden is on the defendant to demonstrate financial inability in order to obtain counsel." (citation omitted)); United States v. Barcelon, 833 F.2d at 896 ("Under the Act the applicant bears the burden of persuading the court that he is financially unable to obtain counsel." (citations omitted)); United States v. Harris, 707 F.2d at 660 (stating that, although the CJA is silent "on the allocation of the burden of proof in proceedings to determine whether counsel

should be appointed or terminated, the weight of authority is that the burden rests with the defendant"). Federal courts have stated that the defendant must prove his financial inability to afford counsel by a preponderance of the evidence. See United States v. Harris, 707 F.2d at 661 (stating that, if a defendant "fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated"); United States v. Quinlan, 223 F. Supp. 2d 816, 817 (E.D. Mich. 2002)("The defendant must present 'evidence sufficient to prove by a preponderance of the evidence that he is financially unable to employ counsel.'" (citation omitted)); United States v. Simmers, 911 F. Supp. 483, 486 (D. Kan. 1995)("Where the defendant's inability to employ counsel has been put in doubt, the defendant has the burden of coming forward with evidence sufficient to prove by a preponderance of the evidence that he is financially unable to employ counsel." (citation omitted)).

In United States v. Harris, the United States Court of Appeals for the Second Circuit set forth the defendant's burden in a proceeding regarding termination of appointed counsel:

> [W]here a defendant's inability to afford counsel has been put into doubt, he has the burden of coming forward with evidence to rebut the government's evidence of ability to afford counsel. If a defendant fails to come forward with additional evidence instead of relying on a terse form affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated.

United States v. Harris, 707 F.2d at 661.

## **ANALYSIS**

The Court finds that Sandoval has proved by a preponderance of the evidence that he is not financially able to obtain counsel, because his debts are almost double his assets, because his current income appears to be approximately $20,000 a year, because his medical condition necessitates treatment, which can be expensive, and for which Sandoval must pay, at least in part, and because Sandoval does not appear to have other sources from which he can finance counsel.

The United States argues that it has discovered documents that show Sandoval has a substantial income. See CJA Motion at 3. The United States presented these documents as exhibits in support of its CJA Motion and as exhibits in the hearing on September 9, 2010.

In response to the United States' CJA Motion, Sandoval submitted an affidavit which is far more detailed than the CJA Form 23 Financial Affidavit. See Affidavit of Kenneth Sandoval (executed November 22, 2010), filed November 22, 2010 (Doc. 33-1)(ex parte). In his affidavit, Sandoval detailed his assets, his debts, and his income. Sandoval also provided bank account statements, credit card statements, and bills to the Court.

A Court may appoint counsel for the defendant if the defendant proves by a preponderance of evidence that he or she is financially unable to afford counsel. See United States v. Barcelon, 833 F.2d at 896 ("Under the Act the applicant bears the burden of persuading the court that he is financially unable to obtain counsel." (citations omitted)); United States v. Harris, 707 F.2d at 661 (stating that, if a defendant "fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated").

The Second Circuit has set forth the defendant's burden in a proceeding regarding termination of appointed counsel:

> [W]here a defendant's inability to afford counsel has been put into doubt, he has the burden of coming forward with evidence to rebut the government's evidence of ability to afford counsel. If a defendant fails to come forward with additional evidence instead of relying on a terse form affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated.

United States v. Harris, 707 F.2d at 661. In analyzing whether a defendant has proved by a preponderance of the evidence that he or she is financially unable to afford counsel, a court may consider the defendant's assets and liabilities, his or her income and expenses, his or her needs, and his or her family's needs, the potential cost of his or her representation, whether others give the

defendant funds for limited purposes only, whether he or she has hidden assets, the availability of other sources of income, and the credibility of his or her representations as to his or her financial affairs. United States v. Barcelon, 833 F.3d at 897 & n.5 (citations omitted).

The United States has submitted evidence that calls into doubt Sandoval's ability to afford counsel. The evidence that the United States submitted relates to Sandoval's income in 2007, 2008, and 2009. In a loan application that Sandoval filled out in February 2007, Sandoval stated that his gross base monthly income was $8,166.00. See Uniform Residential Loan Application at 2 (Government's Exhibit 2 at 2). A 2008 Form W-2 Wage and Tax Statement states that Sandoval's employer paid Sandoval $95,148.12 in wages. See 2008 Form W-2 Wage and Tax Statement at 1 (Government's Exhibit 1 at 69). In a 2009 mortgage application, Sandoval submitted a Request for Verification of Employment Form, which listed his occupation as an account manager and stated that his base pay in 2008 was $95,148.00, that his base pay in 2007 was $85,751.00, and that, as of June 2009, he had earned $53,901.25. See Fannie Mae Request for Verification of Employment at 1 (Government's Exhibit 1 at 67). In an Underwriting Worksheet that Sandoval completed in July 2009, Sandoval represented that he had a monthly income of $7,929.00, and that in 2008, his monthly income was $8,680.00. See Underwriting Worksheet at 1 (dated June 11, 2009) (Government's Exhibit 1 at 60). Sandoval reported his wages as $16,235.00 in his 2009 Form 1040 U.S. Individual Income Tax Return. See 2009 Form 1040 U.S. Individual Income Tax Return at 1 (Government's Exhibit 3).

In response, Sandoval did not solely rely on his CJA Form 23 Financial Affidavit; instead, he submitted a new affidavit and supporting evidence. See United States v. Harris, 707 F.2d at 661 ("If a defendant fails to come forward with additional evidence instead of relying on a terse form affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to afford

counsel, appointed counsel may be terminated."). Sandoval did not contradict the United States' evidence regarding his income in 2007, 2008, and 2009. Rather, Sandoval detailed his current income. Sandoval states that his "present income is estimated at approximately $20,000 a year based on [his] work as a tax preparer." Sandoval Aff. ¶ 8, at 2. Because the United States has not presented evidence regarding Sandoval's current income -- that is, his income in 2010 and 2011-- Sandoval's statement regarding his current income is the only evidence before the Court of his income in 2010 and 2011.

The Court recognizes that several federal courts have considered circumstantial evidence, such as a defendant's substantial income in years preceding the criminal proceeding, in determining whether a defendant is financially able to afford counsel. See United States v. Harris, 707 F.2d at 661 ("[T]he government showed substantial income over the preceding two years, and indicated . . . there might be other undisclosed sources of income. Thus, in addition to showing material misrepresentations . . . in [the defendant's] CJA 23 affidavit, the government rebutted [the defendant's] claim of inability to afford counsel by inference and circumstantial evidence." (internal citations omitted)). In United States v. Deutsch, 599 F.2d 46 (5th Cir. 1979), the United States Court of Appeals for the Fifth Circuit stated:

> [The defendant] . . . complains that the United States did not prove that he had assets at the time of the hearing, but only showed that he had sufficient wealth within the past three years. We believe, however, that the district court could properly infer that [the defendant] was presently able to retain counsel. We do not think that the United States necessarily must prove the net worth of a defendant at the time of trial, but may depend upon circumstantial evidence to show financial ability.

599 F.2d at 48-49. Although the United States has presented evidence from which the Court could infer that Sandoval had a substantial income in the years preceding the initiation of criminal proceedings against him, see Request for Verification of Employment at 1, Sandoval has presented evidence which explains "how his . . . expenses . . . drained away his substantial prior income."

-8-

United States v. Harris, 707 F.2d at 661.  Sandoval presented evidence that his debts amount to approximately $245,721.64.  It is possible that at least some of Sandoval's prior substantial income was used to pay off some of his debts.  Sandoval also previously paid [redacted] his former attorney, Jacqueline Robbins, who represented him pre-indictment.  See Sandoval Aff. ¶ 12, at 3.  Ms. Robbins no longer represents Sandoval, because she "indicated she could no longer represent [him], unless [he] could pay her an additional amount[,] [and] [he] was unable to retain her services for any further assistance."  Id. ¶ 12, at 3.  It therefore appears that some of Sandoval's substantial prior income was used to compensate his former attorney.  The Court finds that, although the United States has presented evidence that Sandoval had a substantial income in previous years, from which the Court may infer that Sandoval is financially able to retain counsel, Sandoval has come forward with additional evidence that explains how his expenses may have drained this substantial prior income.

In response to the United States' CJA Motion, Sandoval offered evidence regarding his current assets.  Sandoval currently owns a home, which is valued at approximately $125,000.00. See Sandoval Aff. ¶ 1, at 1.[1]  Sandoval also owns a 2004 Dodge truck, valued at approximately $10,000.00.  See id. ¶ 4, at 2.  Sandoval does not own stocks, trusts, estates, or retirement accounts; his "primary assets" are his home and his vehicle, and he "own[s] no other assets of equal or greater value."  Id. ¶¶ 5-6, at 2.  On November 22, 2010, Sandoval had approximately $200.00 in his checking account and $25.00 in his savings account.  See id. ¶ 14, at 3.  Cf. Kirtland Federal Credit Union Account Statement at 15-18, filed November 22, 2010 (Doc. 33-2)(ex parte)(listing $25.00

---

[1] Sandoval co-signed his mother's mortgage and his daughter's mortgage.  The Court does not count the value of these homes in Sandoval's assets.  The Court also does not count the amount owed on these mortgages in Sandoval's debts.  Although Sandoval is liable for the mortgages if either his mother or daughter default, there is no evidence before the Court that Sandoval is the person who pays these mortgages.

in Sandoval's savings accounts on October 5, 2010 and $47.92 in Sandoval's checking account on October 5, 2010).  [Redacted].  Sandoval's assets -- specifically, his home, his truck, his savings account, and his checking account -- amount to approximately $135,225.00.

Sandoval also offered evidence regarding his debts.  Sandoval presently owes approximately "$179,000 on the original mortgage plus a second mortgage" on his home.  Sandoval Aff. ¶ 1, at 1. See Chase Home Equity Line of Credit Statement for Period of August 22, 2010 through September 20, 2010 at 21, filed November 22, 2010 (Doc. 33-2)(ex parte)(stating that Sandoval's balance is $41,227.01); GMAC Mortgage Account Statement for Payment Date October 1, 2010 at 5, filed November 22, 2010 (Doc. 33-2)(ex parte)(stating that Sandoval's current principal balance is $134,512.00 and his current escrow balance is $855.94).  Sandoval owes $6,000.00 on his Dodge truck.  See Sandoval Aff. ¶ 4, at 2.  Sandoval also owes approximately $38,000.00 on his credit cards and $22,000.00 to Lovelace Healthcare.  See Sandoval Aff. ¶ 7(a), (b), at 2; Kirtland Federal Credit Union Visa Credit Card Statement for Payment Date of October 8, 2010 at 6, filed November 22, 2010 (Doc. 33-2)(ex parte)(stating that Sandoval's balance is $4,681.81); Bank of America Statement for Payment Date of November 8, 2010 at 7, filed November 22, 2010 (Doc. 33-2)(ex parte)(stating that Sandoval's balance is $2,661.80); Discover More Card Account Summary for Payment Date of November 8, 2010 at 9, filed November 22, 2010 (Doc. 33-2)(ex parte)(stating that Sandoval's balance is $3,627.61); Concoco Account Statement for Payment Date of October 8, 2010 at 10, filed November 22, 2010 (Doc. 33-2)(ex parte)(stating that Sandoval's balance is $334.47); Citi Platinum Select Card Account Statement for Payment Date of November 7, 2010 at 11, filed November 22, 2010 (Doc. 33-2)(ex parte)(stating that Sandoval's balance is $7,149.84); Kirtland Federal Credit Union Account Statement for Period of September 6, 2010 to October 5, 2010 at 16, filed November 22, 2010 (Doc. 33-2)(ex parte)(giving two balances for used vehicle loans of

$5,057.14 and $16,432.39.39); Lovelace Health System Bill (dated May 1, 2007), filed November 22, 2010 (Doc. 33-2)(ex parte)(stating that Sandoval owed $6,138.00 for medical treatment he received on September 15, 2006); Lovelace Medical Center Notice (dated April 17, 2007), filed November 22, 2010 (Doc. 33-2)(ex parte)(asking for permission to contact Sandoval's employer regarding debt of $175.00 and of $250.00). Sandoval owes $216.18 to the Water Utility Authority and $505.46 to the Public Service Company of New Mexico ("PNM"). See Water Utility Authority Customer Services Division Final Notice at 3, filed November 22, 2010 (Doc. 33-2)(ex parte); PNM Billing Summary at 4, filed November 22, 2010 (Doc. 33-2)(ex parte). Sandoval's debts amount to approximately $245,721.64.

The Court finds that the evidence that Sandoval presented in response to the United States' CJA Motion, considered in the context of the factors the Tenth Circuit has set forth for determining a defendant's financial ability to afford counsel, proves by a preponderance of the evidence that Sandoval is financially unable to afford counsel. Although the United States has submitted evidence that, in the years preceding the commencement of criminal proceedings against Sandoval, Sandoval earned substantial income, Sandoval has produced evidence which explains how his expenses drained his substantial prior income. The Court is concerned about Sandoval's truthfulness in his representations about his financial ability. [Redacted]. The credibility of a defendant's representations of his financial ability is but one of the factors that the Tenth Circuit has set forth, however. See United States v. Barcelon, 833 F.3d at 897 & n.5 (citations omitted). A court may also consider the defendant's assets and liabilities, his income, his expenses, his needs, his family's needs, the potential cost of his representation, funds given to him by others for limited purposes only, the existence of hidden assets, and the availability of other sources of income. See id. at 897 & n.5 (citations omitted). Although the Court has concerns about the credibility of Sandoval's

representations regarding his financial ability, the Court recognizes that Sandoval's debts are almost double his assets and that the sole evidence the Court has regarding Sandoval's current income is his statement that he currently makes $20,000.00 a year, which amounts to a monthly income of $1666.66. Sandoval's monthly expenses are approximately double a monthly income of $1666.66. Sandoval has also presented evidence that he has several serious medical conditions, which require expensive treatment. Sandoval has a form of bone cancer, he has spinal fractures, and he is currently prescribed twenty-eight different medications, which he takes three times a day. See Sandoval Aff. ¶ 7(d)-(e), at 2. Sandoval has also suffered from kidney disease, which is currently in remission, and has heart problems related to high blood pressure. See id. ¶ 7(f), at 2. Although for the past eight months, state health insurance has covered part of Sandoval's doctors visits and part of his medical treatment, see Sandoval Aff. ¶ 7(c), at 2, Sandoval must bear at least part of the expenses that he incurs as a result of his medical conditions. The United States has not indicated that Sandoval has hidden assets, and the Court has not seen evidence that indicates Sandoval has hidden assets. Although Sandoval's son helps him pay some of the utilities and groceries, and although his mother and sister occasionally loan him money, see Sandoval Aff. ¶¶ 10-11, at 3, it is not clear that Sandoval's relatives would be able to support an attorney's fees. It appears that his relatives loan Sandoval money to ensure that he can pay his bills. The criminal proceedings against Sandoval are still in the early stages, and there remains much for his counsel to do, which leaves the Court doubtful, by a preponderance of the evidence, that Sandoval has sufficient resources to pay for his remaining defense. See United States v. Gipson, 517 F. Supp. 230, 231 (W.D. Mich. 1981)(finding that the defendant could afford to pay for the remainder of his defense when he had already pled guilty and the proceedings would soon be "expeditiously resolved"). After a careful consideration of the evidence, the Court believes that most of the factors, with the exception of the credibility of

Sandoval's representations regarding his financial ability, support a finding that Sandoval is financially unable to afford counsel. Because Sandoval came forward with additional evidence in response to the United States' CJA Motion, and because the evidence supports a finding that he is financially unable to afford counsel, the Court finds that Sandoval has proved by a preponderance of the evidence that he is financially unable to obtain counsel. Cf. United States v. Harris, 707 F.2d at 661 (stating that, when "a defendant fails to come forward with additional evidence instead of relying on a terse form affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated.").

**IT IS ORDERED** that the Court denies the United States' request that it terminate the appointment of Sandoval's counsel.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jonathon M. Gerson
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Michael A. Keefe
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for Defendant*